IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JONATHAN B. SNIDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV549 |
| | ) | |
| ANDREW M. SAUL,[1], | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff, Jonathan B. Snider, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and a Period of Disability ("POD") under Title II of the Act. The court has

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

before it the certified administrative record and cross-motions for judgment.

I. **BACKGROUND**

Plaintiff filed an application for DIB and a POD, alleging a disability onset date of March 21, 2011. (Tr. at 291–97.)[2] The application was denied initially and upon reconsideration. (Id. at 161-64, 171-74.) After a hearing, the Administrative Law Judge ("ALJ") determined on June 23, 2015, that Plaintiff was not disabled under the Act. (Id. at 139–52.) On September 30, 2016, the Appeals Council remanded the matter to the ALJ, ordering the ALJ to make clarifications with respect to the Residual Functional Capacity ("RFC") and to, if necessary, obtain evidence from a vocational expert ("VE"). (Id. at 157–60.) After a second hearing, the ALJ issued an unfavorable decision on January 19, 2018. (Id. at 18–35, 46-104.)

Specifically, the ALJ concluded that (1) Plaintiff had not engaged in substantial gainful activity during the relevant period; (2) his severe impairments included degenerative disc disease, status post fusion, and obesity; (3) he did not meet or equal a listed impairment; (4) he could perform light work, but could only occasionally climb; could only frequently balance,

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 8.)

stoop, kneel, crouch, and crawl; and he was prohibited from frequent exposure to workplace hazards, such as protective heights and dangerous machinery; and (5) he was unable to perform his past relevant work, but there were jobs in the national economy he could perform. (Tr. at 20-35.) The Appeals Council denied Plaintiff's second request for review, making the ALJ's decision the final decision for purposes of review. (Id. at 1-5.)

## II.  LEGAL STANDARD

Federal law authorizes judicial review of the Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).

"It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation marks omitted).

In undertaking this limited review, this court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or

exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.

Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[3]

---

[3] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

## III. **ANALYSIS**

In pertinent part, Plaintiff contends that the RFC finding was flawed, and that remand is proper, because the ALJ "omitted the use of a cane from her RFC and hypothetical questions to the vocational witness without explanation, despite crediting opinions that [Plaintiff] needs a cane for balance." (Doc. 11 at 7.)[4] As explained below, the court agrees.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. § 404.1545(b)-(c). The ALJ must then match the claimant's exertional abilities to an appropriate level of work. See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs in an exertional level. See 20 C.F.R. § 404.1569a(c). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a

---

[4] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, 1996 WL 374184, at *1.

An ALJ is not bound to accept or adopt all the limitations set out in a medical opinion, even if he accords it significant weight. However, as the Fourth Circuit recently noted, remand may be appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review[.]" See Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016) (citation omitted). For this court to meaningfully review an ALJ's RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (citation omitted). The ALJ, in other words, "must both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphases and alteration in original) (internal quotation marks omitted). Otherwise, the court is "left to guess about how the ALJ arrived at his conclusions" and, as a result, cannot meaningfully review them. Mascio, 780 F.3d at 637.

"The requirement to use a hand-held assistive device may . . . impact [a claimant's] functional capacity by virtue of the fact that one or both upper extremities are not available for

such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(J)(4). Accordingly, an ALJ must consider the impact of a "medically required" hand-held assistive device on a claimant's RFC. See McLaughlin v. Colvin, No. 1:12-CV-621, 2014 WL 12573323, at *2 (M.D.N.C. July 25, 2014) (unpublished); Social Security Ruling 96-9p, 1996 WL 374185, at *7 (July 2, 1996) ("SSR 96-9p"). A hand-held assistive device is "medically required" if "medical documentation establish[es] the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . ." SSR 96-9p, 1996 WL 374185, at *7.[5] Moreover, a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity. See Staples v. Astrue, 329 F. App'x 189, 191-92 (10th Cir. 2009).

Here, in February of 2015, Dr. James E. Hancock, M.D., examined Plaintiff and concluded that:

---

[5] SSR 96-9p applies on its face to claimant's with sedentary RFC's, however, judges in this district have found it instructive at other exertional levels as it relates to hand-held assistive devices, because those other levels involve even greater lifting than sedentary work. See, e.g., Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699, at *9 (M.D.N.C. July 23, 2015) (unpublished) (Webster, M.J.), report and recommendation adopted, Slip Op. (M.D.N.C. Aug. 14, 2015) (unpublished) (Biggs, J.); Atkins v. Berryhill, No. 1:17CV318, 2018 WL 4158397, at *6 (M.D.N.C. Aug. 30, 2018) (unpublished) (Peake, M.J.), report and recommendation adopted, 2018 WL 4688314 (M.D.N.C. Sept. 28, 2018) (unpublished) (Schroeder, C.J.).

> at the current time, [Plaintiff] does require the use
> of a cane to ambulate, more for balance assistance.
> Again, the patient is preparing to enter physical
> therapy/rehabilitation and our hope is with aggressive
> therapy he will be able to improve his strength and
> balance such that in the future the use of a cane
> would not be required, but in the interim that would
> be necessary.

(Tr. at 1286.)

Also, in February of 2015, Kelly A. Bruno, Plaintiff's physical therapist, stated that he

> has some sensory loss in his lower extremities as well
> as lower extremity weakness. He also reports having
> occasional and unpredictable knee buckling. It is for
> these reasons that I have recommended that [Plaintiff]
> ambulate with a cane, thereby decreasing his risk of
> falling and further injury.

(Tr. at 1287.)

In her decision, the ALJ considered Dr. Hancock's opinion, along with Ms. Bruno's recommendation, stating:

> With respect to opinion evidence, the undersigned
> considered Dr. James Hancock's February 2015 opinion
> that the claimant uses a cane, but more for balance
> assistance than ambulation (Exhibit 24F). This opinion
> is accorded great weight because it is consistent and
> supported by the record. For example, after the
> claimant's first surgery, he was able to walk over two
> miles, which indicates an ability to ambulate, in
> spite of his impairments (Exhibit 9F, p. 2). Moreover,
> the claimant's condition has not deteriorated since
> his more recent hardware removal surgery. Therefore,
> the medical records indicating that he was ambulating
> comfortably post-surgery demonstrates that the
> claimant does not need to use a cane for ambulation
> (Exhibit 21F, p. 9). The undersigned notes that other
> records do not note cane usage after October 2016.
> Hence, great weight is accorded to Dr. Hancock's cane
> opinion, as the record supports it.

> These opinions are entitled to little weight, because as previously discussed, the claimant does not require the use a cane to ambulate (see remaining opinions regarding the claimant's need for a cane in Exhibits 20F, p. 3; 26F). However, Kelly Bruno's cane opinion is entitled to more weight (Exhibit 25F). She opined that the claimant should ambulate with a cane, but only to decrease the risk of falling and further injury. This opinion is entitled to some weight because it is consistent with Dr. Hancock's opinion that the claimant needs a cane for balance. As well, she is a licensed physical therapist and has been able to observe the claimant.

(Tr. at 30, 1286, 712, 1266, 1255, 1288, 1287.)

The ALJ's decision as to Plaintiff's need for a cane is not susceptible to judicial review. The ALJ gave "great weight" to Dr. Hancock's opinion stating that Plaintiff needed a cane for balance, but not ambulation. (Tr. at 30, 1286.) The ALJ also credited the assessment of Ms. Bruno, Plaintiff's physical therapist, who likewise concluded that Plaintiff needed a cane to keep from falling. (Tr. at 30, 1287.) Yet, the ALJ did not mention the need for a cane for balance in the RFC or explain why such a limitation was unnecessary in her decision, or explicitly address in the decision whether or not a cane was medically necessary. (Tr. at 18-35.) Nor did the ALJ present the need for a cane for balance in the hypothetical to the VE. (Tr. at 93-102.) This prevents judicial review because it is impossible, without undue speculation on the court's part, to tell whether the ALJ intentionally or inadvertently omitted from

the RFC a cane restriction addressing a deficit in Plaintiff's ability to balance.[6]

The Commissioner's arguments to the contrary are not persuasive. He first contends that the ALJ correctly determined that Plaintiff did not need a cane to ambulate, and he points to evidence in support of the same. (Doc. 15 at 8-10.) However, this argument misses the point. The ALJ in this case appears to have found that Plaintiff needed a cane to balance, because she credited the assertions of both Dr. Hancock and Ms. Bruno that

---

[6] See, e.g., Campbell v. Berryhill, No. 5:17-CV-572-BO, 2019 WL 1140228, at *2 (E.D.N.C. Mar. 12, 2019) (unpublished) (remanding where, despite "ample evidence" of need for a cane, the ALJ did not explain why a cane was not included in the RFC); Houpe v. Berryhill, No. 5:18-CV-49-DSC, 2018 WL 6268213, at *3 (W.D.N.C. Nov. 30, 2018) (unpublished) ("Although the ALJ gave 'great weight' to Dr. Virgili's opinion generally, she did not acknowledge his finding about a cane and made no allowance for use of a cane in the RFC. The ALJ failed to reconcile the inconsistency between her RFC and Dr. Virgili's finding that Plaintiff needed a cane or other assistive device for balance."); Turk v. Berryhill, No. 2:17-cv-00767 AC, 2018 WL 3363738, at *4 (E.D. Cal. July 10, 2018) (unpublished) ("[T]he ALJ erred in giving 'great weight' to the medical opinion of Dr. Alicia Blando, who opined that plaintiff's use of a cane would be appropriate 'mainly for transfers,' while ignoring without explanation Dr. Blando's reference to the cane in her RFC determination."); Harper v. Berryhill, No. 16 C 5075, 2017 WL 1208443, at *8 (N.D. Ill. Apr. 3, 2017) (unpublished); Kelly v. Colvin, No. 3:15-CV-775 (CFH), 2016 WL 5374113, at *12 (N.D.N.Y. Sept. 26, 2016) (unpublished); Pruett v. Colvin, 85 F. Supp. 3d 1152, 1162 (N.D. Cal. 2015); Hamlin v. Colvin, C/A No. 8:12-cv-3601-RMG-JDA, 2014 WL 587464, at *13–14 (D.S.C. Jan. 23, 2014) (unpublished); Talley v. Colvin, No. 3:10-1217, 2013 WL 6255500, at *18 (M.D. Tenn. Dec. 4, 2013) (unpublished), report and recommendation adopted, 2014 WL 61362, at *1 (M.D. Tenn. Jan. 8, 2014) (unpublished); Drawdy v. Astrue, No. 3:08-cv-209-J-HTS, 2008 WL 4937002, at *4 (M.D. Fla. Nov. 17, 2008) (unpublished).

- 12 -

Plaintiff needed to use a cane for balancing and to avoid falling. Having raised this issue, the ALJ was consequently obliged to either address the need for a cane to balance in the RFC and to the VE, or to explain elsewhere in her decision why a cane for balancing was unnecessary. The ALJ failed to do this in a manner susceptible to judicial review.

The Commissioner also appears to contend that any deficit requiring a cane for balancing or otherwise did not last twelve months and so need not be accounted for in the RFC or presented to the VE. (Doc. 15 at 10-11.) This argument is unpersuasive because the ALJ never made such a finding and, in fact, made findings, discussed above, suggesting the opposite in crediting the assessments of Dr. Hancock and Ms. Bruno. Beyond this, the alleged period of disability in this case began on March 21, 2011 and expired on March 30, 2017, the date last insured. (Tr. at 35.) The record contains evidence that might possibly support the need for a cane for balancing for more than one year during the relevant period.

For example, Plaintiff presented with a cane throughout

much of the period of disability.[7] Furthermore, Plaintiff reported falls several times between 2014-2017 and was considered a "fall risk" throughout much of the period of disability.[8] Moreover, the record, as noted, shows that several treatment providers recommended the use of a cane to prevent falls.[9] In light of this, it is far from clear, as the Commissioner seems to suggest, that the ALJ tacitly concluded that Plaintiff did not need a cane for balancing for any legally significant length of time.

All this is sufficient to warrant remand for further consideration so that the ALJ may specifically explain in a

---

[7] See, e.g., Tr. at 1707 (7/20/15), 1834 (7/17/15), 1300 (4/22/15), 1304 (3/26/15), 1294 (2/13/15), 1155 (1/12/15), 1159-1160 (12/8/2014), 1191-1192 (3/11/14) (treatment notes indicating that Plaintiff uses a cane, including for balance), 1195 (1/13/2014), 1200 (12/31/13) (treatment notes indicating that Plaintiff appeared to be "hunched over with a cane" during visit).

[8] See, e.g., Tr. at 1401, 1403, 1423 (4/8/15), 1512 (9/3/14), 1710 (7/20/2015), 1769 (2/23/15) (several falls reported), 1801 (June 2015 report that Plaintiff's knee gave out three times in a week, but was able to catch himself during use of the cane), 1822 (7/29/15), 1996 (10/5/2015); 2049 (12/1/15), 2051 (1/5/16), 2086 (Plaintiff reported two falls in March 2016), 2168 (5/18/16), 2306 (Plaintiff reported fall in March 2017).

[9] See, e.g., Tr. at 1255 (Dr. David Jones, M.D., recommended use of cane), 1286 (Dr. Hancock recommended same); 1287 (Kelly Bruno, Plaintiff's physical therapist, recommended use of cane due to "unpredictable knee buckling"), 1362 (treatment note from Dr. Jones stating that therapist recommended use of cane).

manner susceptible to judicial review whether Plaintiff needed a cane for balancing during the relevant period. None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that question. Nevertheless, in light of all of the above, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings.

Finally, the undersigned declines consideration of the additional issues raised by Plaintiff at this time. <u>Hancock v. Barnhart</u>, 206 F. Supp. 2d 757, 763-64 n.3 (W.D. Va. 2002) (concluding that, on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo).[10]

---

[10] In her initial decision, the ALJ found that Plaintiff was limited to sedentary work with the need to change between sitting and standing positions two times an hour with occasional postural abilities. (Tr. at 144.) The Appeals Council remanded the case, in pertinent part, so that the ALJ could clarify both the frequency and the length of time Plaintiff needs to alternate between sitting and standing. (Tr. at 158.) Plaintiff now contends that the ALJ did not sufficiently address a sit/stand option in her latest decision. (Doc. 11 at 18-20.) Instead, Plaintiff correctly notes, the ALJ found that Plaintiff could do light work with occasional climbing and frequent postural activities. (Tr. at 25.) While the court need not resolve Plaintiff's argument now, given that remand is proper for other reasons, it does note that, on remand, the ALJ should ensure that the inclusion or exclusion of any sit/stand option in the RFC is supported by substantial evidence and described in a narrative explanation susceptible to judicial review.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Commissioner's Decision finding no disability is **REVERSED** and that the matter is **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further proceedings consistent with this Memorandum Opinion and Order. To this extent, the Commissioner's Motion for Judgment on the Pleadings, (Doc. 14), is **DENIED,** and Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner of Social Security or Remanding the Cause for a Rehearing, (Doc. 10), is **GRANTED** to the extent set out herein. To the extent that Plaintiff's motion seeks an immediate award of benefits, it is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Consent Motion for Extension of Time, (Doc. 16), is **GRANTED.**

A Judgment consistent with the Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 19th day of September, 2019.

_____
United States District Judge